**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
v.                                )    Criminal Action
                                  )    No. 16-10166-PBS
SANTO YERA,                       )
                                  )
            Defendant.            )
_____)

**MEMORANDUM AND ORDER**

August 7, 2017

Saris, C.J.

**INTRODUCTION**

Defendant Santo Yera moves to suppress evidence seized by the government during a search of 109 Seaver Street, Apartment Two in Stoughton, Massachusetts, and the attic located above the second floor of the apartment building's common hallway. Defendant argues the government failed to establish probable cause to believe that contraband would be found at 109 Seaver Street because there was no nexus between Defendant's drug activities and that location. Moreover, Defendant argues information in the affidavit supporting the search warrant was stale. Finally, Defendant alleges the search of the attic exceeded the scope of the search warrant.

At the hearing, without objection, Defendant filed an affidavit describing 109 Seaver Street and submitted photographs

1

of the premises. Defendant's Motion to Suppress (Docket No. 227) is **DENIED**.

**FACTUAL BACKGROUND**

I. **The Investigation**

In mid-2015, authorities began an investigation of a drug trafficking organization in Brockton, Massachusetts. Investigators believed Luis Rivera ran a conspiracy to distribute cocaine, crack cocaine, and heroin. Authorities obtained a warrant to intercept wire and electronic communications to and from Rivera's cell phone. Based on multiple intercepted communications over a period of three months, investigators concluded Defendant was a drug supplier for Rivera.

On February 13, 2016, in an intercepted call between Rivera and Defendant, Rivera asked Defendant, "Are you Gucci?" Investigators interpreted this communication to mean that Rivera was asking if Defendant had cocaine for sale. Rivera used the term "Gucci" as a code word to indicate to his customers that he had cocaine.

On February 29, 2016, communications between Rivera and Defendant indicated Defendant was going to supply Rivera with drugs. Rivera told Defendant "a nice check" was ready for him if he could supply Rivera with more drugs. Defendant said that he could.

2

On March 10, 2016, Defendant and Rivera texted each other to set a place and time to meet. Surveillance units observed them meet at Defendant's workplace, an autobody shop located at 954 Centre Street in Brockton, Massachusetts. After their meeting, Rivera sold 69 grams of cocaine to a customer. Investigators believe Defendant supplied the drugs Rivera sold to his customer that night.

On April 7, 2016, communications between Defendant and Rivera suggested they were going to engage in another drug transaction. Rivera texted Defendant asking, "Oh, you got it over there?" About 23 minutes later, Rivera contacted Defendant and said, "I'm outside sucker." Although investigators did not see Rivera at 109 Seaver Street, GPS data from Rivera's cell phone placed him at that location. A car belonging to Defendant was also observed at the scene, suggesting that Defendant was also at 109 Seaver Street. Based on Rivera's conversations with customers prior to meeting with Defendant, along with conversations between Rivera and Defendant that same day, investigators believed Rivera picked up cocaine from Defendant's residence to then sell to a customer.

On May 22, 2016, approximately three weeks before the search warrant for 109 Seaver Street was issued, Rivera spoke with Defendant "to see if [Defendant] can throw [Rivera] some more so [he] can mix it with this one." Investigators

interpreted this request as Rivera asking Defendant for more cocaine.

## II. 109 Seaver Street and the Attic

109 Seaver Street is a two-story residence. There are two apartments in the building, one on each floor. The landlord of 109 Seaver Street lives next door at 107 Seaver Street. Apartment Two, Defendant's apartment, is on the second floor of 109 Seaver Street. There is also an attic trapdoor in the ceiling of the common hallway of the second floor. There are no other units on the second floor. In Defendant's affidavit, he stated he believed the attic area was for storage and was available to the tenants of both the first and second floor apartment units. Docket No. 278. There is no lock on the attic door.

## III. The Search

An application for a search warrant concerning 109 Seaver Street, Apartment Two was submitted on June 8, 2016. In support of the search warrant application, an affidavit was filed on June 8, 2016. To establish probable cause, the affidavit relied on the foregoing intercepted communications to and from Rivera's cell phone, GPS data from Rivera's cell phone, and surveillance.

On June 8, 2016, a search warrant was issued. Pursuant to the warrant, investigators searched 109 Seaver Street, Apartment

4

Two on June 8, 2016. Investigators found a quarter kilogram of cocaine in the attic.

## DISCUSSION

### I. Probable Cause

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched -- the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). The relevant inquiry for the nexus element is as follows:

> When evaluating the nexus between the object and the location of the search, a magistrate judge has to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The application must give someone of reasonable caution reason to believe that evidence of a crime will be found at the place to be searched. The government does not need to show that the belief is necessarily correct or more likely true than false. Nexus can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment, and normal inferences as to where a criminal would hide evidence of a crime. The reviewing court's duty is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. And in making this inquiry, we focus on the facts and supported opinions in the affidavit, ignoring unsupported conclusions.

United States v. Joubert, 778 F.3d 247, 251-52 (1st Cir. 2015) (citations and internal quotation marks omitted).

Here, a substantial basis existed for the magistrate judge's probable cause finding. Intercepted communications on

multiple occasions led the police to believe that Defendant was Rivera's drug supplier. First, on February 13, 2016, Rivera asked the Defendant for cocaine using the code term "Gucci." Second, on February 29, 2016, Rivera asked Defendant for a resupply of cocaine. Third, on March 10, 2016, Rivera's phone conversations revealed he was preparing for a drug transaction with Defendant. Surveillance units observed Defendant and Rivera meet shortly thereafter at an autobody shop in Brockton, Massachusetts. Following this meeting, Rivera engaged in a drug deal with a customer. Fourth, on April 7, 2016, based on intercepted communications, surveillance of 109 Seaver Street, and data indicating Rivera's phone was near 109 Seaver Street, investigators believed Defendant and Rivera met at 109 Seaver Street for a drug deal.

It is reasonable to believe that Defendant, as a drug supplier, would have drugs at his residence. See United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); see also Feliz, 182 F.3d at 88 (noting that when no other drug headquarters is identified, it follows that a drug dealer's home is "a likely place to seek to find incriminating items"). More than that, there is reason to believe that on April 7, 2016, Yera and Rivera engaged in a drug deal at 109 Seaver Street. Therefore, the nexus element is met.

## II. Staleness

Defendant also argues the information used to establish probable cause for a search warrant was stale due to the passage of two months between the April 7, 2016 phone conversation and the issuance of the search warrant on June 8, 2016. However, the drug trafficking was of a continuous nature. See United States v. Hershenow, 680 F.2d 847, 853 (1st Cir. 1982) ("Where the information points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and issuance of the warrant will not render the information stale."). "[I]nformation that might otherwise appear stale may remain fresh and timely during the course of [a drug] operation's progression." United States v. Tiem Trinh, 665 F.3d 1, 14 (1st Cir. 2011).

Here, on May 22, 2016, less than three weeks before the issuance of a search warrant, intercepted communications between Defendant and Rivera indicated they were planning another drug transaction. The police reasonably believed that the relationship -- one spanning several months beginning at least in February and continuing through May -- was ongoing. Defendant's argument that a hiatus of three weeks renders the information stale is unpersuasive. See United States v. Smith, 266 F.3d 902, 904-05 (8th Cir. 2001) (upholding District Court's finding that information in the affidavit concerning drug

transactions occurring three months prior to application for search warrant was not stale).

### III. **Scope of Search Warrant**

Finally, Defendant argues the search exceeded the scope of the warrant. The warrant authorized a search of 109 Seaver Street, Apartment Two and "all rooms, crawl spaces, safes, briefcases, storage areas, containers such as safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, and trash cans located on or near the premises, that are owned or under the control of the occupants of such premises." Docket No. 227, ex. A, p. 2. Defendant argues he had an objectively reasonable expectation of privacy in the common area of a two-family duplex because unlike larger multi-family apartments, access to the common area was limited to Defendant, the first-floor tenants, and the landlord.

Although First Circuit cases do not directly involve duplexes, generally speaking, it has held that "a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building." United States v. Hawkins, 139 F.3d 29, 32 (1st Cir. 1998). In establishing whether a searched location is a common area for purposes of determining a tenant's reasonable expectation of privacy, the First Circuit engages in "a fact-specific inquiry." United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009).

Relevant to the reasonable expectation of privacy inquiry are the following factors: "whether the building contains recognizably separate living units, the residents' right to exclude others from parts of the building, the number of residents, and the formal legal relationship among them." United States v. Werra, 638 F.3d 326, 332 (1st Cir. 2011); see also United States v. Thornley, 707 F.2d 622, 624–25 (1st Cir. 1983) (finding the defendant's expectation of privacy in the basement storage area was unreasonable because it was unlocked, was used by other tenants, access was not restricted, and the defendant was not a tenant).

The facts in this case support the government's position that the attic where the drugs were found was a common area where Defendant had no reasonable expectation of privacy. There was no lock on the attic. Defendant neither took precautions to maintain his privacy nor attempted to exclude others from the attic. See United States v. Holland, 755 F.2d 253, 255 (2d Cir. 1985) (emphasizing that the tenant of the second-floor apartment in a two-story house had no reasonable expectation of privacy in a common hallway because "the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked [building] doors"); see also United States v. Aguirre, 839 F.2d 854, 859 (1st Cir. 1988) (finding no reasonable expectation of privacy in

9

a multi-unit building because, among other factors, "[t]here was no evidence of efforts to exclude others from enjoyment of the property, or of an ability to restrict access"); United States v. Sweeney, 821 F.3d 893, 902 (7th Cir. 2016) (finding no reasonable expectation of privacy in the basement common area of a six-unit building because "there was no individualized storage space and no door or locked entry to the basement itself" even though the building's exterior door was locked). And, the landlord and the first-floor tenants had access to the attic. See United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999) (finding no reasonable expectation of privacy in the hall closet because, among other factors, the two other tenants, as well as the landlord, had access to the closet and the defendant failed to "exclude others from the space").

In some circumstances, courts have found a reasonable expectation of privacy where a familial or special relationship existed between the defendant and the other tenants of the duplex. See United States v. Villegas, 495 F.3d 761, 768 (7th Cir. 2007) (finding no reasonable expectation of privacy in common hallway because, among other things, the defendant did not provide "any evidence that suggests that he and his sister were related to the [other tenants], such that the duplex in its entirety should be considered a single dwelling"). Such a special relationship did not exist here.

One factor in Defendant's favor is the attic door's proximity to Defendant's apartment door. However, such proximity does not outweigh the fact that the first-floor tenants had ready access to the attic by walking upstairs. See McCaster, 193 F.3d at 933 (finding no reasonable expectation of privacy even though the duplex's closet under the staircase was in close proximity to the defendant who resided on the first floor because other tenants also had access to the closet). Against this backdrop, Defendant did not have a reasonable expectation of privacy in the second-floor attic. Therefore, the search of the attic does not violate the Fourth Amendment.

## ORDER

The Court **DENIES** Defendant's Motion to Suppress (Docket No. 227).

/s/ PATTI B. SARIS  
Patti B. Saris  
Chief United States District Judge